# UNITED STATES DISTRICT COURT
for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One (1) Microsoft Surface Pro computer, model<br>type 1796, with a serial number of 04022892953,<br>more fully described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    MJ25-583 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

One (1) Microsoft Surface Pro computer, model type 1796, with a serial number of 04022892953, more fully described in Attachment A

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, for list of items to be seized, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 26 U.S. Code § 7206(1) and § 7206 (2) | False or Fraudulent Statements on Tax Returns |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Clement Rogers, Special Agent IRS
*Printed name and title*

This warrant is presented: ☑ by reliable electronic means ☐ telephonically recorded ☐ in person.

Date: _____ September 15, 2025 _____

_____
*Judge's signature*

City and state: _____ Seattle, Washington _____

Brian A. Tsuchia, United States Magistrate Judge
*Printed name and title*

USAO: 2025R00995

**AFFIDAVIT OF XXXXXXXXXX**

STATE OF WASHINGTON    )

                            )      ss

COUNTY OF KING         )

I, Clement Rogers, a Special Agent with the Internal Revenue Service, having been duly sworn, state as follows:

**AGENT BACKGROUND**

1.    I am a Special Agent with the United States Treasury Department, Internal Revenue Service (IRS), Criminal Investigation Division and have been so employed since August 2007. I am currently assigned to the Seattle Field Office, Tacoma, Washington Post of Duty. As a Special Agent, my duties and responsibilities include investigations of individuals and business entities which have allegedly violated federal criminal laws of the United States Code, including, but not limited to, Title 26 (Internal Revenue Code), Title 18 (Money Laundering and other Federal crimes), and Title 31 (Bank Secrecy Act), and related financial statutes. Prior to becoming a Special Agent, I was employed as an Assistant District Attorney by the State of New Mexico, Office of the Second Judicial District Attorney. I received my bachelor's degree from the University of New Mexico. I received my Juris Doctorate from Seattle University.

2.    As a Special Agent, I received training from the Federal Law Enforcement Training Center graduating from the Criminal Investigation Training Program. I also graduated from the National Criminal Investigation Training Academy's Special Agent Basic Training Program. The training included, but was not limited to, the investigation of financial crimes, tax related crimes (Title 26, United States Code), and other related offenses, and the laws related to searches and seizures under the Fourth Amendment and the execution of search warrants.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS - 1
USAO# 2025R00995

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

3.      I am knowledgeable in analyzing financial transactions and I am familiar with the techniques and methods used by return preparers to falsify Federal Income Tax Returns. I have conducted other investigations of offenses under Title 26, United States Code, § 7206(2) (aiding, assisting, and advising in the preparation or presentation of false and fraudulent income tax returns), Title 26, United States Code, § 7201 (attempting to evade or defeat tax), and I have also consulted with other special agents who have conducted similar investigations in the preparation of this affidavit. I have executed search warrants involving financial records.

### INTRODUCTION AND PURPOSE OF AFFIDAVIT

4.      This Affidavit is submitted in support of an addendum to search LEE ANTHONY GREGORY's computer, which was discovered during the execution of the associated search warrant of GREGORY and GREGORY'S residence located at 9304 Westview Dr SW, Lakewood, WA 98498, d/b/a Gregory Network ("SUBJECT PREMISES"). This addendum incorporates by reference the Affidavit of Clement Rogers in MJ25-5341, and the associated search warrant authorizing a search of GREGORY's person and the SUBJECT PREMISES, attached hereto.

5.      On September 10, 2025, when approaching the SUBJECT PREMISES to execute the MJ25-5341 search warrant, agents saw that GREGORY was getting into his car to depart the SUBJECT PREMISES. GREGORY had his laptop computer with him and placed it inside the car, on the passenger seat. Agents then approached GREGORY to serve the MJ25-5341 search warrant on him.

6.      Agents could see the computer placed inside GREGORY's car and believed this to be GREGORY's work laptop. The MJ25-5341 warrant did not authorize the search of the car, but did authorize the seizure and search of any digital devices, including laptops and tablet computers, located on GREGORY's person or in the SUBJECT PREMISES.

7.      Agents asked GREGORY if he would be willing to give law enforcement the computer located in his car and informed GREGORY that he was under no obligation to

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS - 2
USAO# 2025R00995

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

do so. GREGORY consented to doing so and, before retrieving the laptop, signed two IRS consent forms. Special Agent Sanjay Battan had GREGORY sign a Digital Forensics form to search and seize the laptop, a Microsoft Surface. I had GREGORY sign a consent form to enter and search the vehicle, a Black Acura, license plate number ALA1510—however, law enforcement did not search GREGORY's vehicle. GREGORY then went into his car, retrieved his laptop, and provided it to Special Agent Battan. Special Agent Battan seized the laptop and later identified it as a Microsoft Surface Pro computer, model type 1796, with a serial number of 04022892953 (the "SUBJECT COMPUTER"). The SUBJECT COMPUTER matches the description previously provided by the undercover agent during the undercover operation conducted at the SUBJECT PREMISES, which was used to prepare a false tax return.

8.     Special Agent Battan took the SUBJECT COMPUTER to the IRS Criminal Investigations, Digital Forensics Unit, located at 915 Second Avenue, Room 2301, Seattle, WA 98174.

//

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS - 3
USAO# 2025R00995

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## CONCLUSION

9.      Based on the foregoing, I respectfully submit that there is probable cause that evidence, fruits, and instrumentalities of the crimes of making fraudulent and false statements in material matters, in violation of Title 26 United States Code § 7206(1), and aiding or assisting in the preparation of Federal Income Tax Returns which are false and fraudulent as in material matters, in violation of Title 26 United States Code § 7206(2) are located on the SUBJECT COMPUTER, as more fully described in Attachment A to this affidavit. I therefore request that the court issue an addendum warrant authorizing a search of the SUBJECT COMPUTER for the items more fully described in Attachment B, incorporated herein by reference, and the seizure of any such items found therein.

CLEMENT ROGERS, Affiant
Special Agent, IRS

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on this 15th day of September 2025.

BRIAN A. TSUCHIDA
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS - 4
USAO# 2025R00995

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## ATTACHMENT A - ADDENDUM

## DIGITAL DEVICE TO BE SEARCHED

The property to be searched is a Microsoft Surface Pro computer, model type 1796, with a serial number of 04022892953 (the "SUBJECT COMPUTER"), pictured below. The SUBJECT COMPUTER is currently located at IRS-CI, Digital Forensics, 915 2nd Avenue, Rm 2301, Seattle, WA 98174. This warrant authorizes the forensic examination of SUBJECT COMPUTER for the purpose of identifying the electronically stored information described in Attachment B.





ATTACHMENT A – ADDENDUM - 1
USAO# 2025R00995

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B – ADDENDUM**

**ITEMS TO BE SEIZED**

All records on the SUBJECT COMPUTER, as described in more detail in Attachment A, and that constitute evidence, instrumentalities, or fruits of violations of 26 United States Code § 7206(1) and § 7206(2), those violations involving LEE ANTHONY GREGORY and others known and unknown to investigators, and occurring in or after January 1, 2018, (collectively the "SUBJECT OFFENSES") including:

1. All records and documents related to the preparation of individual federal income tax returns, including:

    a. Forms 1040, U.S. Individual Income Tax Return, or attachments;

    b. Tax forms or schedules, such as Schedule C, that reflect a business associated with a Form 1040;

    c. GREGORY'S records of income and expense, and other records describing income and expense information, including but not limited to:

        i. W-2 forms, 1099 forms, earnings statements, and other tax forms;

        ii. Records reflecting business income;

        iii. Records of business expenses;

        iv. Information pertaining to dependents, including names, relationships, and payment for support and care of the dependents;

2. Client records of income and expenses, and other records describing income and expense information provided by clients, including but not limited to:

    a. W-2 forms, 1099 forms, earnings statements, and other tax forms;

    b. Records reflecting business income received by clients, including the name, location, and type of business;

    c. Records of business expenses;

ATTACHMENT B – ADDENDUM - 1
USAO# 2025R00995

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

d.      Information pertaining to dependents, including names, relationships, and payment for support and care of the dependents;

e.      Client intake forms or data sheets

3.      IRS publications, regulations, or copies of IRS forms and documents; extracts from the Internal Revenue Code; and any non-privileged correspondence relating to IRS forms, Internal Revenue Statutes, or regulations and tax schedules.

4.      Documents or materials related to training in tax law or the preparation of tax returns, including training manuals, examples, templates, and non-privileged correspondence in electronic, video, and paper formats.

5.      Records identifying the taxpayers for whom tax returns have been prepared, including client files, client listings, correspondence, telephone books, business cards, notes or other client identifying information.

6.      Any correspondence, documentation, or training materials from any owners or employees or associates of GREGORY NETWORK.

7.      Payroll or payment records for any current or former employees and independent contractors.

8.      Invoices, receipts, ledgers, schedules, or other records relating to tax consulting or tax preparation fees charged or payments of tax consulting or preparation fees.

9.      Records relating to federal income tax refunds, specifically, U.S. Treasury Checks (tax refunds) or direct deposits into an account(s), including amounts received.

10.     Records of or pertaining to the issuance of a debit or prepaid bank card used for obtaining tax refunds for a customer or for payment of the tax preparer fee.

11.     Records of financial relationships with clients including bank account records, bank statements, deposit statements/slips, receipts, ledgers, cash receipts books, checks, check books, canceled checks, check registers, withdrawal slips, Certificates of Deposits documents, wire transfers, cashier's checks, money orders, mutual fund or other

ATTACHMENT B – ADDENDUM - 2
USAO# 2025R00995

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

securities' records, credit applications, loan documents, loan payments, loan statements, invoices or bills, payroll records, currency, safe deposit box records or keys.

12. Records evidencing occupancy, use, and/or ownership of the SUBJECT PREMISES described above, including utility or telephone bills, mail envelopes, or addressed correspondence.

13. Evidence of who used, owned, or controlled the SUBJECT COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence.

14. Any information related to potential co-conspirators of the SUBJECT OFFENSES (including names, addresses, phone numbers, or any other identifying information);

15. Evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

16. Evidence of the lack of such malicious software.

17. Evidence of the attachment to the SUBJECT COMPUTER of other storage devices or similar containers for electronic evidence.

18. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the SUBJECT COMPUTER or other electronic storage media associated with the SUBJECT COMPUTER.

19. Evidence of the times the SUBJECT DEVICE was used.

20. Passwords, password files, test keys, encryption codes or other information necessary to access the SUBJECT COMPUTER, associated storage devices, or data.

ATTACHMENT B – ADDENDUM - 3
USAO# 2025R00995

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

21.     Documentation and manuals that may be necessary to access the SUBJECT COMPUTER or to conduct a forensic examination of the SUBJECT COMPUTER.

22.     Applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched.

23.     Records and things evidencing the use of an Internet Protocol address to communicate with:

    a.     Including, but not limited to, the Internet Service Provider(s) Comcast (Xfinity) and T-Mobile;

    b.     routers, modems, and network equipment used to connect computers to the Internet;

    c.     records of Internet Protocol addresses used including, but not limited to, 71.197.173.233, 73.193.85.130, 73.221.196.171, and 172.56.81.25.

24.     Records of, or information about, the SUBJECT COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of digital or electronic storage and any photographic form.

ATTACHMENT B – ADDENDUM - 4
USAO# 2025R00995

UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

**<u>Appendix A – MJ25-5341 Application and Affidavit</u>**

AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD May 2025)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

<table>
<tr><td>

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One (1) Subject Premises and One (1) Individual, as more fully described in Attachments A-1 and A-2

</td><td>

)
)
)
)
)
)
)

</td><td>

Case No.    MJ25-5341

</td></tr>
</table>

```
                                    ┌──── FILED ──── LODGED
                                    │ ──── RECEIVED
                                    │      SEP 0 3 2025
                                    │   CLERK U.S. DISTRICT COURT
                                    │ WESTERN DISTRICT OF WASHINGTON AT TACOMA
                                    │ BY                        DEPUTY
```

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
One (1) Subject Premises and One (1) Individual, as more fully described in Attachments A-1 and A-2

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, for list of items to be seized, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S. Code § 7206(1) and § 7206 (2) | False or Fraudulent Statements on Tax Returns |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Clement Rogers, Special Agent IRS
_____
*Printed name and title*

This warrant is presented: ☑ by reliable electronic means ☐ telephonically recorded ☐ in person.

Date: _____ September 3, 2025 _____

_____
*Judge's signature*

City and state: _____ Tacoma, Washington _____

Grady J. Leupold, United States Magistrate Judge
_____
*Printed name and title*

USAO: 2025R00995

**AFFIDAVIT**

STATE OF WASHINGTON          )

                             )     ss

COUNTY OF PIERCE             )

I, Clement Rogers, a Special Agent with the Internal Revenue Service, having been duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the United States Treasury Department, Internal Revenue Service (IRS), Criminal Investigation Division and have been so employed since August 2007. I am currently assigned to the Seattle Field Office, Tacoma, Washington Post of Duty. As a Special Agent, my duties and responsibilities include investigations of individuals and business entities which have allegedly violated federal criminal laws of the United States Code, including, but not limited to, Title 26 (Internal Revenue Code), Title 18 (Money Laundering and other Federal crimes), and Title 31 (Bank Secrecy Act), and related financial statutes. Prior to becoming a Special Agent, I was employed as an Assistant District Attorney by the State of New Mexico, Office of the Second Judicial District Attorney. I received my bachelor's degree from the University of New Mexico. I received my Juris Doctorate from Seattle University.

2.      As a Special Agent, I received training from the Federal Law Enforcement Training Center graduating from the Criminal Investigation Training Program. I also graduated from the National Criminal Investigation Training Academy's Special Agent Basic Training Program. The training included, but was not limited to, the investigation of financial crimes, tax related crimes (Title 26, United States Code), and other related offenses, and the laws related to searches and seizures under the Fourth Amendment and the execution of search warrants.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.      I am knowledgeable in analyzing financial transactions and I am familiar with the techniques and methods used by return preparers to falsify Federal Income Tax Returns. I have conducted other investigations of offenses under Title 26, United States Code, § 7206(2) (aiding, assisting, and advising in the preparation or presentation of false and fraudulent income tax returns), Title 26, United States Code, § 7201 (attempting to evade or defeat tax), and I have also consulted with other special agents who have conducted similar investigations in the preparation of this affidavit. I have executed search warrants involving financial records.

4.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following location and individual. First, a search of the premises located at 9304 Westview Dr SW, Lakewood WA  98498, d/b/a Gregory Network, hereinafter "SUBJECT PREMISES," as more fully described in Attachment A-1 to this Affidavit, for the property and items described in Attachment B to this Affidavit. Second, a search of the person of LEE ANTHONY GREGORY, the person associated with the SUBJECT PREMISES at 9304 Westview Drive SW, Lakewood WA 98498 and pictured in the photograph in Attachment A-2 for the property and items described in Attachment B.

5.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

6.      Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that evidence, fruits and instrumentalities of violations of criminal offenses against the United States, namely making fraudulent and false statements, in violation of Title 26, United States Code, §7206(1) and aiding, assisting, and advising in the preparation or presentation of false and fraudulent income tax returns, in violation of Title 26, United States Code, §7206(2) will be found at the SUBJECT PREMISES.

## THE INVESTIGATION

7.     The IRS is investigating a tax return preparer, Lee Gregory, d/b/a Gregory Network, LLC, for aiding and assisting in the preparation of false or fraudulent income tax returns for his clients and falsifying his own tax return. Filing false or fraudulent income tax returns is a false, fictitious, or fraudulent claims against the United States in the form of federal income tax refund, which is specifically prohibited under 26 U.S.C. § 7206.

8.     Gregory prepares tax returns remotely and out of his home-office, the SUBJECT PREMISES, for a cash fee. Gregory has an assigned Preparer tax identification number (PTIN), which he enters on the returns. Gregory e-files the tax returns he prepares for his clients.

9.     The investigation originated from a fraud referral from the IRS Refund Crimes Unit. The IRS Refund Crimes investigated Gregory and recommended a further criminal investigation because the evidence indicated Gregory likely prepared fabricated Schedule A's, Schedule C's, and falsely allowed his clients to utilize Residential Energy Credits ("REC") where they did not otherwise qualify for such credits.

7.     The IRS's Refund Crimes Unit (formerly known as the Scheme Development Unit or SDC) conducts statistical review and data analyses within the IRS's databases to identify statistical anomalies that could indicate potential violations of the Internal Revenue Code by tax return preparers or others. The Refund Crimes Unit then refers those potential violations to IRS special agents for further investigation. Gregory's practice caught the Refund Crimes Unit's attention, in part, because it saw that the percentage and amount of the refunds Gregory's clients received were far outside the

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

national average. Once the Refund Crimes Unit analyzed returns Gregory prepared, they identified questionable tax returns and ultimately referred Gregory for further investigation.

8.      For instance, the returns Gregory prepared contained questionable Forms 5695, which is the form used to claim RECs for qualified energy-efficient home improvements and equipment. This form allows taxpayers to calculate and take advantage of tax credits associated with energy-efficient systems, potentially saving up to $500 on taxes. Gregory's Form 5695 were questionable both due to their content and the volume Gregory was filing such forms.

9.      Gregory frequently prepared tax returns where the REC amounts were equal to, or otherwise similar enough to offset, the full tax liability amounts. In other words, Gregory would zero out his clients' tax liability with these credits so they would not have a tax due owing to the IRS, and oftentimes, the clients would even qualify to receive a refund because of Gregory's application of the RECs. Gregory's clients were allowed to claim the credits with no documentation that would reconcile to any cost of improvements being made to clients' homes. Some of the clients' addresses were identified as apartment buildings. Based on my training and experience, it is uncommon that landlords regularly allow tenants to install clean energy equipment—such as solar panels, solar water heaters, or geothermal heat pumps—on the landlords' property, particularly in apartment buildings.

10.      As part of its statistical analysis, the IRS Refund Crimes Unit examined 1,286 client tax returns submitted by Gregory for the years 2018 through 2023. Of these 1,286 tax returns, $4,502,232 in refunds were issued to Gregory's clients, with an average rate of 95.7% of the tax returns resulting in a tax refund being issued—an abnormally high return rate. Similarly, for the tax year 2024, Gregory has a 99.8% refund rate for the returns he prepares. Depending on the type and complexity of the tax return, the normal refund rate for the years in question was between 64% and 70%. The below chart summarizes the Refund Crimes Unit's analysis of Gregory's returns:

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Processing Year | Total Returns | Number of Refund Returns | Amount of Refund Returns Claimed | Refunds Issued | Refunds Held[1] |
|---|---|---|---|---|---|
| 2024[2] | 82 | 81(99%) | $380,899 | $243,702 | $137,197 |
| 2023 | 207 | 197 (95%) | $877,399 | $821,851 | $55,617 |
| 2022 | 203 | 196 (97%) | $809,153 | $676,093 | $133,060 |
| 2021 | 204 | 202 (99%) | $730,686 | $741,300 | ($10,545) |
| 2020 | 228 | 217 (95%) | $802,943 | $753,807 | $49,136 |
| 2019 | 191 | 178 (93%) | $678,817 | $652,035 | $26,782 |
| 2018 | 171 | 157 (92%) | $613,493 | $613,444 | $49 |
| Total | 1,286 | 1,228 (95%) | $4,893,390 | $4,502,232 | $254,099 |

11.     For their referral, IRS Refund Crimes found the most common methods Gregory utilized to generate a refund was to falsely claim a REC or falsify a Schedule C or to artificially inflate the refund amount. Both avenues are discussed in turn below.

12.     First, Gregory misused RECs to manipulate his clients tax refund amount. There are two types of RECs. First, the Residential Clean Energy Credit is a renewable energy tax credit. The credit is worth 30% of certain qualified expenses for residential clean energy property. Equipment that qualifies for the Residential Clean Energy Credit includes, but is not limited to, solar, wind, geothermal power sources, fuel-cell technology, and battery storage technology as eligible expenditures. Second, the Energy Home Improvement Credit is a tax credit for homeowners to adopt energy-efficient improvements for their home. This tax credit directly reduces the amount of tax owed and is worth 30% percent of certain qualified expenses or income, depending on the guidelines set forth by

[1] Refunds held equals the Refunds Issued (i.e. dispersed by IRS) from Refunds Claimed.
[2] This information is current as of March 18, 2024, but it can change because the analysis for the tax year is not complete.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the IRS. Eligible upgrades include, but are not limited to, insulation, roofing, windows, and doors.  Out of Gregory's 1,286 returns prepared, 34% claimed an REC.

| Processing Year | Total Returns | Sch. C (Profit or Loss) Returns | Earned Income Credit (EIC) Returns | Additional Child Tax Credit (ATAC)[3] | Residential Energy Credit (REC) |
|---|---|---|---|---|---|
| 2024 (partial) | 82 | 43 (52%) | 9 (11%) | 18 (22%)[4] | 36 (44%) |
| 2023 | 207 | 124 (60%) | 31 (15%) | 38 (18%) | 96 (46%) |
| 2022 | 203 | 121 (60%) | 33 (16%) | 61 (30%) | 71 (35%) |
| 2021 | 204 | 119 (58%) | 34 (17%) | 30 (15%) | 86 (42%) |
| 2020 | 228 | 140 (61%) | 39 (17%) | 41 (18%) | 89 (39%) |
| 2019 | 191 | 108 (57%) | 41 (21%) | 36 (19%) | 56 (29%) |
| 2018 | 171 | 92 (54%) | 44 (26%) | 32 (19%) | 9 (5%) |

13.     Gregory's client's tax returns were then compared to state and national averages. For tax years 2017 through 2023, an average of approximately 34% of the tax returns Gregory prepared contained RECs, compared to an average of approximately .8% for Washington and 1% for the nation. The preparer firm, Gregory Network LLC, where Gregory is the only known tax preparer, was determined to have a high percentage of questionable return issues compared to the State of Washington and the nation.

14.     The Refund Crime Unit's also review all 1,286 Form 1040 returns from the relevant processing years during its analysis of Gregory's submitted returns. According to

---

[3] The EIC is a federal tax credit designed to assist low- to moderate-income workers and families by providing a tax break. The ATAC is an extra tax credit that allows you to claim and potentially receive a portion of the unused Child Tax Credit as a refund. Gregory's use of these credits was part of Refund Crimes Unit's statistical analysis, but IRS-CI focused on the use of the REC because it was Gregory's most prolific scheme and was used during an Undercover Transaction.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Refund Crimes Unit's findings, Gregory Network LLC had an abnormally high percentage of Schedule C Returns, Earned Income Credit ("EIC") Returns, Additional Child Tax Credit ("ATAC"), and REC Returns. Initial statistical information provided by the Refund Crime is summarized in the tables below:

| | Refunds | Sch. C Returns | Earned Income Credit (EIC) Returns | Additional Child Tax Credit (ATAC) | Residential Energy Credit (REC) |
|---|---|---|---|---|---|
| **Tax Year 2023** | | | | | |
| Gregory Network LLC | 99% | 52% | 11% | 22% | 44% |
| Washington | 60% | 17.8% | 10% | 8.6 | 0.7% |
| Nation | 64.4% | 22% | 15.3% | 11.9% | 1.1% |
| **Tax Year 2022** | | | | | |
| Gregory Network LLC | 95% | 60% | 15% | 18% | 46% |
| Washington | 59.1% | 19.3% | 99.2% | 8.1% | 1.8% |
| Nation | 62.7% | 23.5% | 14.2% | 11.4% | 2.1% |
| **Tax Year 2021** | | | | | |
| Gregory Network LLC | 97% | 59% | 16% | 30% | 35% |
| Washington | 60% | 18.8% | 12.2% | 22.5% | 1.2% |
| Nation | 65.7% | 22.6% | 19% | 24.3% | 1.6% |
| **Tax Year 2020** | | | | | |
| Gregory Network LLC | 99% | 57% | 17% | 15% | 42% |
| Washington | 66.3% | 18.4% | 9.4% | 8.7% | 0.9% |
| Nation | 70.5% | 21.5% | 15.1% | 12% | 1.4% |
| **Tax Year 2019** | | | | | |
| Gregory Network LLC | 95% | 61% | 17% | 18% | 39% |
| Washington | 62.8% | 19% | 10.4% | 9.6% | 0.8% |
| Nation | 67.6% | 22.1% | 16.3% | 13.1% | 1.2% |
| **Tax Year 2018** | | | | | |
| Gregory Network LLC | 93% | 53% | 21% | 19% | 29% |
| Washington | 63.7% | 18.7% | 10.8% | 10.1 | 0.3% |
| Nation | 68.4% | 21.5% | 16.7% | 13.5% | 0.5% |

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**A. Undercover Contacts**

13.    On March 21, 2025, an undercover operation was conducted to have Gregory prepare a tax return for the undercover agent ("UC"). Gregory advertised his business on the Internet with the domain name https://gregorynetwork.com/. Gregory's phone number and office address, the SUBJECT PREMISES, are present under the website's contact tab.

14.    On March 6, 2025, the UC contacted Gregory at the phone number provided on Gregory's website. The UC's profile stated the UC had moved from Texas and called Gregory to verify if he was accepting new clients to prepare taxes and to set up an appointment. Gregory answered the phone call and accepted the appointment to prepare the UC's tax return. On March 7, 2025, the UC called Gregory to discuss what form of payment Gregory would accept. Gregory stated he would accept a cash payment to provide his services. On March 19, 2025, the UC had a subsequent contact with Gregory to make a final confirmation of the appointment and verify location of the appointment. Gregory confirmed the appointment and verified the 9304 Westview Dr SW, Lakewood WA 98498 address for the appointment, the SUBJECT PREMISES, which is Gregory's home and office.

15.    On March 21, 2025, at approximately 11:00 a.m., the UC arrived for the arranged appointment to have Gregory prepare a tax return. During the appointment, Gregory prepared a false tax return. The following information was recorded and/or observed by the UC during the transaction.

16.    At approximately 10:25 a.m., the UC contacted Gregory to let him know he was en route to Gregory's office and residence. Gregory re-confirmed the time for 11:00am, and the address, 9304 Westview Dr SW, Lakewood WA 98498.

17.    At the meeting, the UC handed Gregory a Form W-2. Had Gregory prepared the UC's return correctly, it should have shown a tax due and owing of $330.

18.    To prepare the tax return, as was expected per the UC's tax return profile, Gregory used the Standard Deduction (rather than itemized deductions). However, the

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

UC's return resulted in a $654 refund to the UC instead of the UC owing $330 to the IRS. After the return was completed, the UC did not ask Gregory to change or work on the return further. However, the UC asked if $654 was he would receive.

19.    Unprompted, Gregory stated that the UC may be eligible for the Working Families Credit ("WFC"), a Washington State tax credit based on filing a federal income tax return and other factors. To qualify for the WFC in Washington State, the applicant must meet specific income, residency, and age requirements.

20.    The amount of the possible credit received under the WFC ranges from $50 to $1,255, depending on family size and income level. The applicant must have lived in Washington State for at least 183 days during the tax year applied for. The applicant must have earned at least $1 in income during the tax year applied for. If the applicant does not have qualifying children, they must be between 25 and 65 years old. If there is at least one qualifying child, there is no age restriction.

21.    Gregory asked when the UC moved from Texas to determine if the UC was eligible. The UC answered that it had been more than six months prior to March 2025 which met the time in-state requirement, but this was the only question Gregory asked the UC before supposedly applying the WTC, despite there being other requirements of eligibility.

22.    The UC profile was intentionally designed to be ineligible for any credits and was instead designed to result in a tax due and owing. In any case, the maximum amount received under the WTC is $1,255, which typically requires the taxpayer to have children and/or dependents. The UC had no children or dependents.

23.    Further, Gregory did not have UC go through the proper process to apply for the WTC. The proper process to apply for the WFC requires a separate state form to be completed during or after the federal income taxes are filed. The federal income tax form is attached to the application and submitted to the Washington State Department of Revenue to receive the WFC. The WFC is not a credit claimed on the federal tax return in

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

order to reduce the taxpayers' tax liability or generate a refund. If received, the credit is given to the taxpayer via a check or direct deposit from the Washington State Department of Revenue There is no mechanism under the WFC program that would have resulted in the refund the UC received.

24.    Once Gregory completed the changes to the UC tax return, he said the UC, "Will get something extra," but how much was beyond Gregory's control. Once Gregory made further changes on the tax return, he further informed the UC that the State, "Gave the full credit," which resulted in an additional $1,440 credit. Gregory finally informed the UC was to eventually receive a $3,139 refund.

25.    On the UC's actual tax return there were no entries regarding the WTC. Instead, Gregory claimed $2,369 for the Residential Clean Energy Credit and $1,200 for the Energy Efficient Home Improvement Credit, both of which are types of RECs. Gregory did not discuss these credits with the UC during the transaction.

26.    The UC should not have been eligible for either of these credits. The UC's eligibility to claim the REC was not discussed during the preparation appointment. Further, anyone claiming the credits would need to have supporting documentation such as receipts and/or invoices noting the purchase and installation of the eligible upgrades. The UC had no such paperwork. Claiming these credits resulted in a $3,239 refund that the UC was not otherwise entitled to.

27.    Gregory prepared the tax return in his kitchen. No one other than Gregory prepared the tax return. Gregory had no employees or associates.

28.    The UC observed Gregory prepare the tax return on a laptop computer utilizing unknown software. Gregory e-filed the tax return and provided the UC with a copy.

29.    Gregory charged the UC $125 in cash for the tax preparation. Gregory charged the UC a lower "referral rate" for the tax return because the UC stated he received Gregory's name from someone at his gym.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

30. After the transaction was complete, Gregory gave the UC a business card showing the name, "Gregory Network Financial Services, LLC." Along with other information, the card has Gregory's name as L.A. Gregory, Finance Manager/Notary Public, the business address as 9304 Westview Drive SW, Lakewood WA 98498, the phone number 253-306-6644, the email address lag@gregorynetwork.com, and website address www.gregorynetwork.com.

31. There was a cover page for the tax return Gregory prepared for the UC titled, "2024 Income Tax Return." The titled page included information about the UC with the name and address. The "Prepared By" section included Gregory Network, LLC, and the same telephone number and email address listed on the business card. The second page of the tax return, in the Paid Preparer section, Gregory put his name as the preparer, the EIN assigned to the Gregory Network, LLC, and the PTIN assigned to Gregory.

**B. Gregory's Personal Income Tax Returns**

32. During the course of this investigation, Gregory's individual income tax returns were reviewed for the tax years 2019 through 2024. There were multiple potentially false items on the returns, including but not limited to:

33. *Schedule C*: The Schedule C reports Gregory's business activity as a "Notary", but it does not mention anything about providing financial services or tax preparation services. By not noting his tax return business on the return, Gregory is potentially not reporting the income from providing these services. Further, the expenses deducted on the Schedule C are inconsistent with this type of business. As an example, in tax year 2022, Gregory claimed $65,160 in expenses as a Notary, which resulted in a $37,197 loss for his business.

34. The IRS gathers data for common business expenses and income averages for specific types of employment. Based on this data, common expenses for a Notary include rent, utilities, office supplies, software maintenance and updates, and marketing and advertising. The average full-time income for a Notary in western Washington ranges

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

from $60,000 to $75,000, depending on the type of practice. The average income for a part-time Notary in western Washington ranges from $10,000 to $25,000, depending on the type of practice. The average amount of expenses for a Notary in western Washington ranges from $5,000 to $50,000, depending on the type of practice.

35.    Comparing Gregory's reported income and expenses as a Notary to the regional averages, Gregory's expenses are outside the averages, especially considering he is a single, independent Notary, with no employees, and working out of his home. The expenses line item included, but was not limited to, $4,200 in advertising, $4,592 in car and truck expenses, $9,722 in contract labor, $2,250 in other business property, $5,121 in repairs and maintenance, $3,000 in supplies, $8,335 in travel and meals, and $8,740 in wages (there is no indication that Gregory has any employees). For a Notary, the IRS typically does not see these types or levels of expenses unless the Notary is operating a business with a team and a stand-alone office, not working out of the home.

36.    On his own personal income tax returns, Gregory reports business income from Gregory Network, LLC. However, on the Schedule C, Gregory holds himself out as a Notary Public, not a Financial Advisor or Tax Preparer. Notably, Gregory filed paperwork with the Washington Secretary of State to form the Gregory Network as a limited liability company, on November 7, 2017. The nature of the business is listed as financial services and gunsmithing.

37.    *Residential energy credits*: Gregory claimed nearly $85,000 of qualifying costs from 2018 through 2024. It is unusual to claim these expenses every year, especially given the eligible expenses are limited. It is highly unlikely to install air conditioners, heat pumps, and or geothermal power sources across six years. It is particularly questionable as some of these costs are contrary to each other. For instance, Gregory's returns claim these RECs for the purported purchase of a geothermal heat pump and a central air conditioning system, which are both used to remove heat from the home.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

38.    For the Residential Energy Credit and Energy Efficient Home Improvement Credit a taxpayer can receive a maximum credit of $3,200 each year. The taxpayer can claim the RCE every year of eligibility, but must install eligible property upgrades each year to do so. A taxpayer can also spread-out eligible costs until the credit begins to phase out in 2033. If the home is used for up to 20% for business, the taxpayer can receive the full credit. If the taxpayer uses more than 20% of the home property for business use, they will receive a credit based on the portion of the expense allocated to nonbusiness use. It is unlikely that Gregory installed new eligible upgrades every year from 2018 through 2024. In any case, the maximum credit allowed for each year is $3,200. It is unclear if Gregory took the business use of his home into consideration either.

39.    *Forms 1040*: Gregory filed Forms 1040, with itemized deductions and a Schedule C to report his business income. Gregory self-prepares his personal tax returns. He and his wife, Athena Marie Gregory, appear to live together at the SUBJECT PREMISES. Cars registered to his wife and associated with this address on Washington State records are regularly seen parked at the SUBJECT PREMISES. There is no record of a divorce between Gregory and his wife in any court in Washington State. The SUBJECT PREMISES' address is associated with Ms. Gregory's driver's license on Washington State records. Despite being married and apparently living with his wife, Gregory classifies himself on the tax returns as Head of Household, not Married Filing Jointly or Married Filing Separately. There were no taxes filed or prepared for Gregory's wife, Athena Marie Gregory, for the tax years in question.

40.    The following is a summary of Gregory's filed federal income tax returns:

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Tax Year | Taxable Income Per Return | Corrected Taxable Income[5] | Balance Due |
|----------|---------------------------|----------------------------|-------------|
| 2019 | $46,985 | $72,168 | $7,221 |
| 2020 | $68,131 | $74,553 | $6,824 |
| 2021 | $51,779 | $78,634 | $9,596 |
| 2022 | $57,482 | $96,211 | $13,568 |
| 2023 | $72,484 | $108,035 | $12,906 |
| 2024 | $56,891 | $99,118 | $11,353 |
| TOTAL | $353,752 | $528,719 | $61,468[6] |

## C. Conclusion

41.    Based on the above outlined investigation and my training and experience, there is probable cause to believe Gregory is preparing false tax returns from his home/office location, in violation of 26 United States Code § 7206. Further, there is probable cause to believe that relevant documents and records relating to Gregory's preparation of false tax returns, as detailed in Attachment B, will be found at the SUBJECT PREMISES.

42.    Based on my training and experience, and the training and experience of the other IRS Special Agents with whom I have consulted, I know that individuals engaged in preparing false tax returns will often maintain records at their residence and/or place of business. Such items include books and records pertaining to Gregory, his tax preparation business, and his clients, as detailed in Attachment B.

43.    Based on my training and experience, and the training and experience of the other IRS Special Agents with whom I have consulted, I also know that it is customary for persons in the business of tax return preparation to maintain records relating to clients with whom they do business with for several years. I know it is customary for return preparers to keep files where they work. I also know when returns are prepared electronically, files

[5] This is the taxable income corrected after removing the disallowed tax credits and/or expenses.
[6] At this time, these income and tax calculations are estimates for reference and are not evidence of criminal tax due and owing.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

are created and stored on the computers used to prepare them. I know these files will usually contain the identifying information, wage and tax information, and bank account information used to prepare the returns. These files will assist in the identification of Gregory's clients and the bank accounts into which funds from Gregory's transactions were deposited.

44.     Further, IRS Criminal Investigation has direct knowledge from the UC that Gregory prepares tax returns on a laptop computer utilizing unknown tax software. Gregory printed a copy of the tax return and gave the copy to the UC. A copy of the tax return was also filed with the IRS, which indicates Gregory saves copies of the tax returns he prepares on the computer located at the SUBJECT PREMISES.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

41.     As described above and in Attachment B, this application seeks permission to search for evidence, fruits and/or instrumentalities that might be found at the SUBJECT PREMISES, in whatever form they are found. One form in which the evidence, fruits, and/or instrumentalities might be found is data stored on digital devices[1] such as computer hard drives or other electronic storage media.[2] Thus, the warrant applied for would authorize the seizure of digital devices or other electronic storage media or, potentially, the copying of electronically stored information from digital devices or other electronic storage media, all under Rule 41(e)(2)(B).

---

[1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, iPods, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.

[2] Electronic Storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

42.    As part of my investigation, I have consulted with Computer Information Specialists ("CIS") from the IRS Digital Forensics Unit. CISs, like other IRS-CI Special Agents, investigate numerous financial crimes, including but not limited to, income tax related crimes, money laundering, wire fraud, and public corruption. However, CISs expand their expertise to include computer forensics, and computer crime scene investigations. In order to do so, CISs receive training as a Seized Computer Evidence Recovery Specialist, at the Federal Law Enforcement Training Center. They are also trained in the execution of search warrants involving computers and related equipment, electronic data preservation, and the recovery, documentation and authentication of evidence. CIS's have taken computer related courses covering spreadsheets, word processors, and other specialized software developed to assist with the forensic analysis of digital data, digital evidence recovery, password detection, etc.

43.    *Probable cause.*  Based upon my review of the evidence gathered in this investigation, my review of data and records, information received from other agents and computer forensics examiners, and my training and experience, I submit that if a digital device or other electronic storage media is found at the SUBJECT PREMISES, there is probable cause to believe that evidence, fruits, and/or instrumentalities of the crimes of Title 26, United States Code, §7206(1) (Fraud and false statements) and §7206(2) (Aiding or assisting in fraud or false statements), will be stored on those digital devices or other electronic storage media. I believe digital devices or other electronic storage media are being used to maintain business records of the fraudulent tax preparation scheme. As discussed above, Gregory used at least one electronic device, a laptop, when preparing the UC's fraudulent tax return. Furthermore, based on my knowledge, training, and experience, I know that business owners often use electronic devices, such as computers or smart phones to operate and maintain business records. There is, therefore, probable cause to believe that evidence, fruits and/or instrumentalities of the crimes of Title 26, United States

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Code, § 7206(1) and (2) exists and will be found on a digital device(s) or other electronic storage media at the SUBJECT PREMISES, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be preserved (and consequently also then recovered) for months or even years after they have been downloaded onto a storage medium, deleted, or accessed or viewed via the Internet. Electronic files downloaded to a digital device or other electronic storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a digital device or other electronic storage media, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the digital device or other electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

44.   Based on actual inspection of tax returns and the information obtained by the UC, I am aware that digital devices and other electronic storage media were used to generate, store, and print documents used in the false tax return preparation scheme. There is reason to believe that there is a computer system currently located at the SUBJECT PREMISES.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

45.    There is reason to believe that there is a computer system currently located at the SUBJECT PREMISES. Based on my training and experience as a Special Agent, the experience of other Special Agents, and persons knowledgeable in computer forensics, I know that:

a.  Individuals engaged in an income-producing activity (business owners) normally maintain financial records, income tax records, property records, and business records where they conduct business. This allows the business to consult and use the information when making business decisions and preparing financial information, including for legal and regulatory purposes such as filing tax returns. The records kept at a place of business often relate to the business's current and historical activity and performance, such as bank records, income records, expense records, cash receipts journals, loan records, notes, ledgers, blank forms, contracts, receipts, copies of cashier's checks, copies of money orders, invoices, customer lists, tax records, and other financial records. Financial, property, and business records are also maintained on computers, discs, flash drives, DVD drives, detachable drives, and other electronic devices that store data and are maintained at residences and offices;

b.  Business owner(s) often maintain safes on the PREMISES in which cash, receipts, and other records are often kept in the ordinary course of business;

c.  Individuals engaged in fraudulent activities frequently retain records of their transactions within their place of business, or other places under their control. These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts, agreements, personal bank records, records showing asset ownership and acquisition, investments, records of cash hoards, insurance records, loan records, promissory notes, travel documents, safe deposit box keys, tax information, and other records. Records of this kind are also often stored on computer media;

d.  Individuals engaged in fraudulent activities often maintain such records for long periods of time, particularly when they are involved in an ongoing criminal conduct over a long period of time.

46.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices or other electronic storage media were used, the purpose of

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital devices or other electronic storage media located at the SUBJECT PREMISES because:

a. Stored data can provide evidence of a file that was once on the digital device or other electronic storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the digital device or other electronic storage media that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the history of connections to other computers, the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device or other electronic storage media was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner and/or others with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

events relating to the crime under investigation.[7] Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a digital device or other electronic storage media works can, after examining this forensic evidence in its proper context, draw conclusions about how the digital device or other electronic storage media were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device or other electronic storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a digital device or other electronic storage media was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present. For example, the

---

[7] For example, if the examination of a computer shows that: a) at 11:00am, someone using the computer used an internet browser to log into a bank account in the name of John Doe; b) at 11:02am the internet browser was used to download child pornography; and c) at 11:05 am the internet browser was used to log into a social media account in the name of John Doe, an investigator may reasonably draw an inference that John Doe downloaded child pornography.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 20

presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

## DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES

47.    Gregory used his personal phone to communicate with the UC.

48.    Gregory uses email to communicate, and the email address is noted on the Gregory Network LLC website, the business card, and on the cover page for the tax return prepared during the undercover transaction.

49.    Gregory has at least one laptop computer used for tax preparation, which was used during the undercover transaction.

50.    Per IRS records, Gregory's usual business practice is to file prepared tax returns electronically.

51.    Based on my knowledge, training, and experience, I know that owners of small and closely held businesses often use their personal cellular phone to conduct business and tend to keep such phones on their person.

52.    Based on my knowledge, training, and experience, I know that business owners often use computers or other electronic storage media to maintain business records and communications pertaining to business matters.

53.    Based on my knowledge, training, and experience, I know that individuals often provide their tax return preparer with summaries, schedules, bank statements, and other financial documents. Individuals can provide these records to their return preparer via email or otherwise electronically.

## PAST EFFORTS TO OBTAIN ELECTRONICALLY STORED INFORMATION

54.    Because of the nature of the evidence that I am attempting to obtain and the nature of the investigation, I have not made any prior efforts to obtain the evidence based on the consent of any party who may have authority to consent. I believe that based upon the nature of the investigation and that Gregory Network is a closely held business with only one known officer/owner noted on the formation paperwork—Lee Gregory. If

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Gregory becomes aware of the execution of a search warrant, he may attempt to destroy any potential evidence, whether digital or non- digital, thereby hindering law enforcement agents from the furtherance of the criminal investigation.

55.    Gregory does use online services for his business website and email. I have served a Preservation Letter on Ntirety, Inc., which is the provider for Gregory's email. I worked directly with Ntirety's General Counsel in order to properly serve the letter.

56.    Gregory also has a website advertising his business services. I served a Preservation Letter to GetNetSet.com, which hosts Gregory's website and specializes in website services for financial service professionals. GetNetSet.com does not have a Standard Operating Procedure and/or department to handle legal service of process. I worked directly with the company's owner, who will be directing the process to respond to the Preservation Letter and any potential Search Warrant.

## REQUEST FOR AUTHORITY TO CONDUCT OFF-SITE SEARCH OF TARGET COMPUTERS

57.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of premises for information that might be stored on digital devices or other electronic storage media often requires the seizure of the physical items and later off-site review consistent with the warrant. In lieu of removing all of these items from the premises, it is sometimes possible to make an image copy of the data on the digital devices or other electronic storage media, onsite. Generally speaking, imaging is the taking of a complete electronic picture of the device's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the item, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

> a. *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 22

could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine the respective digital device and/or electronic storage media to obtain evidence. Computer hard drives, digital devices and electronic storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. *Technical requirements.* Digital devices or other electronic storage media can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the items off-site and reviewing them in a controlled environment will allow examination with the proper tools and knowledge.

c. *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of electronic storage media formats and on a variety of digital devices that may require off-site reviewing with specialized forensic tools.

## SEARCH TECHNIQUES

58. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging, or otherwise copying digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant.

59. Because several people share the SUBJECT PREMISES as a residence, it is possible that the SUBJECT PREMISES will contain digital devices or other electronic storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If agents conducting the search nonetheless reasonably determine that the things described in this warrant could be found on those devices, the applied-for warrant for would permit the seizure and review of those items as well.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 23

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

60. Gregory's phone, identified by the number (253) 306-6644, appears to be exclusively used by him. This is phone number the UC used to contact Gregory. During the UC transaction, Gregory was the only person in possession of the phone. The phone number is the one used listed on his website, as the phone number for the Gregory Network, LLC, Gregory's business. It is the phone number that is listed for Gregory's gunsmithing business. It is the phone number listed for Gregory on Taxpro.com, an online listing service for tax professionals. Gregory signed and filled out his corporate formation documents with Office of the Secretary of the State of Washington by hand. On the formation form, Gregory listed this same phone number. There is no indication that Gregory's spouse, who resides at the SUBJECT PREMISES, uses this phone.

61. Gregory Network, LLC ("the Company") is a functioning company that conducts some legitimate business. The seizure of the Company's computer and other devices may limit the Company's ability to conduct its legitimate business. As with any search warrant, I expect that this warrant will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption. If the owner of the Company requests, the agents will, to the extent practicable, attempt to provide them with copies of data that may be necessary or important to the continuing function of the Company's legitimate business. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

62. Consistent with the above, I hereby request the Court's permission to seize and/or obtain a forensic image of digital devices or other electronic storage media that reasonably appear capable of containing data or items that fall within the scope of Attachment B to this Affidavit, and to conduct off-site searches of the digital devices or other electronic storage media and/or forensic images, using the following procedures:

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## A.    Processing the Search Sites and Securing the Data.

a.  Upon securing the physical search site, the search team will conduct an initial review of any digital devices or other electronic storage media located at the subject premises described in Attachment A-1 and on the person described in Attachment A-2 that are capable of containing data or items that fall within the scope of Attachment B to this Affidavit, to determine if it is possible to secure the data contained on these devices onsite in a reasonable amount of time and without jeopardizing the ability to accurately preserve the data.

b.  In order to examine the electronically stored information ("ESI") in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device or other electronic storage media that is capable of containing data or items that fall within the scope of Attachment B to this Affidavit.[8]

c.  A forensic image may be created of either a physical drive or a logical drive. A physical drive is the actual physical hard drive that may be found in a typical computer. When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive. A logical drive, also known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive). Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive. Law enforcement will only create an image of physical or logical drives physically present on or within the subject device. Creating an image of the devices located at the search locations described in Attachments A-1 and A-2 will not result in access to any data physically located elsewhere. However, digital devices or other electronic storage media at the search locations described in Attachments

---

[8] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures. When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties. Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence. Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess. Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case. Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 25

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A-1 and A-2 that have previously connected to devices at other locations may contain data from those other locations.

d.  If based on their training and experience, and the resources available to them at the search site, the search team determines it is not practical to make an on-site image within a reasonable amount of time and without jeopardizing the ability to accurately preserve the data, then the digital devices or other electronic storage media will be seized and transported to an appropriate law enforcement laboratory to be forensically imaged and reviewed.

**B.**     **Searching the Forensic Images.**

a.  Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques.  In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant.  The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.  Those techniques, however, may necessarily expose many or all parts of a hard drive to human inspection in order to determine whether it contains evidence described by the warrant.

## BIOMETRICS

63.    The warrant I am applying for would permit law enforcement to obtain from certain individuals the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

64.    I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 26

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

65.    If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

66.    If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face, iris, or retina. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

67.    While not as prolific on digital devices as fingerprint and facial-recognition features, both iris and retina scanning features exist for securing devices/data. The human iris, like a fingerprint, contains complex patterns that are unique and stable. Iris recognition technology uses mathematical pattern-recognition techniques to map the iris using infrared light. Similarly, retina scanning casts infrared light into a person's eye to map the unique variations of a person's retinal blood vessels. A user can register one or both eyes to be used to unlock a device with these features. To activate the feature, the user holds the device in front of his or her face while the device directs an infrared light toward the user's face

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and activates an infrared sensitive camera to record data from the person's eyes. The device is then unlocked if the camera detects the registered eye.

68.    In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

69.    As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

70.    I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours and the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

71.     In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device, and may not be the only individual whose physical characteristics are among those that will unlock the device via biometric features. Furthermore, while physical proximity is an important factor in determining who is the user of a device, it is only one among many other factors that may exist.

72.     Due to the foregoing, I request that if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, and if law enforcement reasonably suspects Lee Gregory is a user of the device, then—for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant—law enforcement personnel shall be authorized to:(1) press or swipe the fingers (including thumbs) of Lee Gregory on the fingerprint scanner of the device; and/or (2) hold the device in front of the face and open eyes of Lee Gregory and activate the facial, iris, or retina recognition feature.

73.     In pressing or swiping an individual's thumb or finger onto a device and in holding a device in front of an individual's face and open eyes, law enforcement may not use excessive force, as defined in *Graham v. Connor*, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

### CONCLUSION

74.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of the crimes of making fraudulent and false statements in material matters, in violation of Title 26 United States Code § 7206(1), and aiding or assisting in the preparation of Federal Income Tax Returns which are false and fraudulent as in material matters, in violation of Title 26 United States Code § 7206(2) are located at the SUBJECT PREMISES, as more fully described in Attachment A-1 to this Affidavit, and the person

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 29

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of LEE ANTHONY GREGORY, as more fully described in Attachment A-2, as well as on and in any digital devices or other electronic storage media found at the SUBJECT PREMISES or GREGORY. I therefore request that the court issue a warrant authorizing a search of the SUBJECT PREMISES and GREGORY, as well as any digital devices and electronic storage media located therein, for the items more fully described in Attachment B hereto, incorporated herein by reference, and the seizure of any such items found therein.

75.    The affidavit and application are being presented by reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

_____
Clement Rogers, Special Agent
IRS

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on this 3rd day of September 2025.

_____
GRADY J. LEUPOLD
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT CLEMENT ROGERS
USAO# 2025R00995 - 30

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A-1

The property to be searched is 9304 Westview Drive SW, Lakewood WA 98498, a multi-story residence (with at least two stories) situated in Lakewood WA (the "SUBJECT PREMISES"), and any digital device/s or other electronic storage media found therein. Facing the SUBJECT PREMISES, the property number, 9304, appears to the left of the main entrance. The property is East of the intersection of Northstar Way SW and Westview Drive SW (at the intersection, Westview Drive SW runs West to East). The residence has white trim with light beige siding. A garage is situated to the right of the residence's front door entrance.



ATTACHMENT A - 1
USAO# 2025R00995

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A-2

## PERSON TO BE SEARCHED

This individual to be searched is the person of LEE ANTHONY GREGORY, the person associated with the SUBJECT PREMISES at 9304 Westview Drive SW, Lakewood WA 98498 and pictured in the photograph below, and any digital devices or other electronic storage media found on this person. LEE ANTHONY GREGORY is further described as an African American male, approximately 63 years old, with brown eyes, approximately 6 foot 1 inches and approximately 205 lbs.



ATTACHMENT A - 2
USAO# 2025R00995

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B

## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed); photocopies or other photographic form; and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, or electronic notebooks, or any other electronic storage medium) that are in/on the SUBJECT PREMISES or LEE ANTHONY GREGORY, as described in more detail in Attachments A-1 and A-2 and that constitute evidence, instrumentalities, or fruits of violations of 26 United States Code § 7206(1) and § 7206(2), those violations involving GREGORY and others known and unknown to investigators, and occurring in or after January 1, 2018, including:

1.    All records and documents related to the preparation of individual federal income tax returns, including:

      a.    Forms 1040, U.S. Individual Income Tax Return, or attachments;

      b.    Tax forms or schedules, such as Schedule C, that reflect a business associated with a Form 1040;

      c.    GREGORY'S records of income and expense, and other records describing income and expense information, including but not limited to:

          i.    W-2 forms, 1099 forms, earnings statements, and other tax forms;

          ii.    Records reflecting business income;

          iii.    Records of business expenses;

          iv.    Information pertaining to dependents, including names, relationships, and payment for support and care of the dependents;

2.    Client records of income and expenses, and other records describing income and expense information provided by clients, including but not limited to:

ATTACHMENT B- 1
USAO# 2025R00995

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

     a.     W-2 forms, 1099 forms, earnings statements, and other tax forms;

     b.     Records reflecting business income received by clients, including the name, location, and type of business;

     c.     Records of business expenses;

     d.     Information pertaining to dependents, including names, relationships, and payment for support and care of the dependents;

     e.     Client intake forms or data sheets

3.     IRS publications, regulations, or copies of IRS forms and documents; extracts from the Internal Revenue Code; and any non-privileged correspondence relating to IRS forms, Internal Revenue Statutes, or regulations and tax schedules.

4.     Documents or materials related to training in tax law or the preparation of tax returns, including training manuals, examples, templates, and non-privileged correspondence in electronic, video, and paper formats.

5.     Records identifying the taxpayers for whom tax returns have been prepared, including client files, client listings, correspondence, telephone books, business cards, notes or other client identifying information.

6.     Any correspondence, documentation, or training materials from any owners or employees or associates of GREGORY NETWORK.

7.     Payroll or payment records for any current or former employees and independent contractors.

8.     Entry and access to any safes, vaults, briefcases, or any other locked containers; and access to and seizure of their contents, if named herein, as well as any safe deposit box or other lock box keys.

9.     Invoices, receipts, ledgers, schedules, or other records relating to tax consulting or tax preparation fees charged or payments of tax consulting or preparation fees.

ATTACHMENT B- 2
USAO# 2025R00995

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10.    Records relating to federal income tax refunds, specifically, U.S. Treasury Checks (tax refunds) or direct deposits into an account(s), including amounts received.

11.    Records of or pertaining to the issuance of a debit or prepaid bank card used for obtaining tax refunds for a customer or for payment of the tax preparer fee.

12.    Records of financial relationships with clients including bank account records, bank statements, deposit statements/slips, receipts, ledgers, cash receipts books, checks, check books, canceled checks, check registers, withdrawal slips, Certificates of Deposits documents, wire transfers, cashier's checks, money orders, mutual fund or other securities' records, credit applications, loan documents, loan payments, loan statements, invoices or bills, payroll records, currency, safe deposit box records or keys.

13.    Records evidencing occupancy, use, and/or ownership of the SUBJECT PREMISES described above, including utility or telephone bills, mail envelopes, or addressed correspondence.

14.    Digital devices[1] or other electronic storage media[2] containing any of the records or information described above or used as a means to commit the violations described above, including to generate, store, or transmit records in furtherance of the violations.

15.    For any digital device or other electronic storage media upon which electronically stored information that is called for by this warrant may be contained, that may contain things otherwise called for by this warrant, or whose seizure is otherwise authorized by this warrant:

---

[1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.

[2] Electronic Storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

ATTACHMENT B- 3
USAO# 2025R00995

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.    evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.    evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.    evidence of the lack of such malicious software;

d.    evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

e.    evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

f.    evidence of the times the digital device or other electronic storage media was used;

g.    physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

h.    passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

i.    documentation and manuals that may be necessary to access the digital device or other electronic storage media or to conduct a forensic examination of the digital device or other electronic storage media;

j.    applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

k.    contextual information necessary to understand the evidence described in this attachment.

16.    Records and things evidencing the use of an Internet Protocol address to communicate with:

a.    Including, but not limited to, the Internet Service Provider(s) Comcast (Xfinity) and T-Mobile;

ATTACHMENT B- 4
USAO# 2025R00995

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.      routers, modems, and network equipment used to connect computers to the Internet;

c.      records of Internet Protocol addresses used including, but not limited to, 71.197.173.233, 73.193.85.130, 73.221.196.171, and 172.56.81.25.

d.      records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

During the execution of the search of the Subject Premises described in Attachment A-1, if law enforcement encounters a smartphone or other electronic device equipped with a biometric-unlock feature, and if law enforcement reasonably suspects LEE ANTHONY GREGORY is a user of the device, then—for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant—law enforcement personnel are authorized to: (1) press or swipe the fingers (including thumbs) of LEE ANTHONY GREGORY to the fingerprint scanner of the device; and/or (2) hold the device in front of the face and open eyes of LEE ANTHONY GREGORY and activate the facial, iris, or retina recognition feature.

In pressing or swiping an individual's thumb or finger onto a device and in holding a device in front of an individual's face and open eyes, law enforcement may not use excessive force, as defined in *Graham v. Connor*, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR

ATTACHMENT B- 5
USAO# 2025R00995

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.

ATTACHMENT B- 6
USAO# 2025R00995